IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**ERIE INSURANCE PROPERTY
& CASUALTY COMPANY,**

**Petitioner,**

**ELECTRONICALLY FILED**

**v.**                                                **CIVIL ACTION NO.** 3:17-cv-03882

**WEST TENAMPA MEXICAN
RESTAURANT, INC., LUPE JOSE
VALENCIA, ARTEMIO PEREZ, and
AMANDA MAYNUS,**

**Respondents.**

## PETITION FOR DECLARATORY JUDGMENT

Now comes the Petitioner, Erie Insurance Property & Casualty Company, by and through counsel, Matthew J. Perry, Esquire, and Lamp Bartram Levy Trautwein & Perry, P.L.L.C., and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §2201, respectfully requests that this Court declare the rights and responsibilities of the parties relative to a contract of insurance issued to the Respondent, West Tenampa Mexican Restaurant, Inc. In support of its Petition, the Petitioner states as follows:

**The Parties**

1.     The Petitioner, Erie Insurance Property & Casualty Company ("Erie"), is a Pennsylvania corporation engaged in the business of insurance with policies of insurance issued in the state of West Virginia.

1

2.      The Respondent, West Tenampa Mexican Restaurant, Inc., is a West Virginia corporation with a principal place of business located in Huntington, Cabell County, West Virginia.

3.      Upon information and belief, the Respondent, Lupe Jose Valencia was an employee of West Tenampa Mexican Restaurant, Inc. in Huntington, Cabell County, West Virginia and is otherwise a resident in Cabell County, West Virginia.

4.      Upon information and belief, the Respondent, Artemio Perez was an employee of West Tenampa Mexican Restaurant, Inc. in Huntington, Cabell County, West Virginia and is otherwise a resident in Cabell County, West Virginia.

5.      Upon information and belief, the Respondent, Amanda Maynus was employed by West Tenampa Mexican Restaurant, Inc. in Huntington, Cabell County, West Virginia and is a resident of Kanawha County, West Virginia.

**Jurisdiction and Venue**

6.      Jurisdiction in this case is appropriate pursuant to 28 U.S.C. §1332, in that the Petitioner and Respondents are citizens of different states, and the amount in controversy is in excess of $75,000, exclusive of interest and costs.

7.      Venue in this case is proper pursuant to 28 U.S.C. §1391, because a substantial part of the events giving rise to this claim occurred in Cabell County, West Virginia.

**Facts and Claims**

8.      On or about September 13, 2016, a Complaint was filed by the Respondent, Amanda Maynus, in Civil Action No. 16-C-1396, in the Circuit Court of Kanawha County, West Virginia, naming West Tenampa Mexican Restaurant, Inc., Lupe Jose Valencia and Artemio Perez as Defendants (the "Underlying Lawsuit").  A copy of

the Complaint filed in the Underlying Lawsuit is attached hereto and incorporated herein as "Exhibit 1."

9.      The Underlying Lawsuit was subsequently transferred to the Circuit Court of Cabell County, West Virginia and is currently pending as Civil Action No. 16-C-731.

10.     The Complaint filed in the Underlying Lawsuit alleges that the Respondent, Amanda Maynus, was employed at West Tenampa Mexican Restaurant, Inc. beginning in the summer of 2015 until she was constructively discharged sometime after the summer of 2016.

11.     The Complaint filed in the Underlying Lawsuit alleges that the Respondent, Amanda Maynus, was sexually harassed and racially discriminated against during the course of her employment by the Respondents, West Tenampa Mexican Restaurant, Inc., Lupe Jose Valencia and Artemio Perez, in violation of the West Virginia Human Rights Act, WV Code §5-11-1, et seq.

12.     The Complaint filed in the Underlying Lawsuit alleges that the character of the Respondent, Amanda Maynus, was defamed and that she was slandered and held up to public ridicule through the sexual comments made by the Respondents, West Tenampa Mexican Restaurant, Inc., Lupe Jose Valencia and Artemio Perez.

13.     The Complaint in the Underlying Lawsuit alleges that the Respondents, West Tenampa Mexican Restaurant, Inc., Lupe Jose Valencia and Artemio Perez, invaded the privacy of the Respondent, Amanda Maynus, through the unlawful intrusion into Ms. Maynus' private affairs.

14.     The Complaint in the Underlying Lawsuit alleges that the Respondent, Amanda Maynus, was constructively discharged due to a hostile work environment that was sexually charged and intolerable.

15.     The Complaint in the Underlying Lawsuit alleges that the Respondent, West Tenampa Mexican Restaurant, Inc., violated the West Virginia Wage Payment and Collection Act, WV Code §21-5-1 et seq., by failing to pay all wages due to the Respondent, Amanda Maynus, at the time of her separation from employment.

16.     The Complaint in the Underlying Lawsuit alleges that the Respondents, West Tenampa Mexican Restaurant, Inc., Lupe Jose Valencia and Artemio Perez, intentionally and purposefully placed the Respondent, Amanda Maynus, in fear for her personal and physical well-being, and that such conduct constitutes assault and battery.

17.     As a result of the allegations pled in the Complaint in the Underlying Lawsuit, Amanda Maynus alleges that she has suffered emotional distress, humiliation, anxiety, embarrassment, aggravation, annoyance and inconvenience.

18.     With regard to the emotional injuries sustained by the Respondent, Amanda Maynus, as alleged in the Complaint in the Underlying Lawsuit, no physical manifestations of those injuries are alleged.

19.     The Complaint in the Underlying Lawsuit seeks damages in the form of liquidated damages as determined by statute, front pay, back pay, compensatory damages, statutory attorney fees and costs, prejudgment and post-judgment interest, and punitive damages.

20.     At the time of the incidents complained of the Complaint in the Underlying Lawsuit, the Respondent West Tenampa Mexican Restaurant, Inc. was insured by an Erie Ultraflex Package Insurance Policy, Policy No. Q42 6950046, with policy periods of June 19, 2015 to June 19, 2017, (the "Erie Policy"). A certified copy of the Erie Policies for the applicable policy periods are attached hereto and incorporated herein as "Exhibit 2" and "Exhibit 3."

### *The Erie Policy – Who Is An Insured*

21.     The Petitioner restates and incorporates herein its allegations as contained in Paragraphs 1 through 20 of this Petition for Declaratory Judgment, as if fully set forth herein.

22.     With respect to the Erie Policy at issue, the named insured on the Declarations is West Tenampa Mexican Restaurant, Inc.

23.     The Erie Policy also provides, in relevant part, the following as to who is an insured under the Erie Policy:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION II – WHO IS AN INSURED**

1.  If you are designated in the Declarations as:

    d.  An organization other than a partnership, joint venture or limited liability company, you are an insured.  Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors.  Your stockholders are also insureds, but only with respect to their liability as stockholders.

2.  Each of the following is also an insured:

    a.  Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.  However, none of these "employees" or "volunteer workers" are insureds for:

        1)  "Bodily injury" or "personal and advertising injury":

a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph **1)a)** above; or

c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph **1)a)** above; or

d) Arising out of his or her providing or failing to provide professional health care services.

*See Exhibit 2 and 3, Commercial General Liability Coverage Form,* pages 8-9.

24.    The allegations in the Underlying Lawsuit assert that Amanda Maynus, while in the course of her employment or performing duties related to the conduct of West Tenampa Mexican Restaurant's business was injured by her co-employees.

25.    In accordance with the terms of the Erie Policy, the Respondents, Lupe Jose Valencia and Artemio Perez, do not qualify as insureds under the Erie Policy for the claims asserted in the Underlying Lawsuit.

26.    As the Respondents, Lupe Jose Valencia and Artemio Perez, do not qualify as insureds under the Erie Policy for the claims asserted in the Underlying Lawsuit, there is no coverage under the Erie Policy for those Respondents.

### *The Erie Policy – Bodily Injury And Property Damage Liability Coverage*

27.     The Petitioner restates and incorporates herein its allegations as contained in Paragraphs 1 through 26 of this Petition for Declaratory Judgment, as if fully set forth herein.

28.     Relative to coverage for bodily injury and property damage, the insuring agreement for the Erie Policy, as modified by Endorsement, provides in relevant part as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages, including punitive or exemplary damages to extent allowed by law, because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.  We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  But:

   1)  The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

   2)  Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

b.   This insurance applies to "bodily injury" and "property damage" only if:

1)   The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"'

2)   The "bodily injury" or "property damage" occurs during the policy period; and

3)   Prior to the policy period, no insured listed under Paragraph **1**. of Section **II** – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.  If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

*See Exhibit 2 and Exhibit 3, Commercial General Liability Coverage Form, page 1 and Coverage for Punitive Damages Endorsement, page 1.*

29.    Based on the language of the insuring agreement, coverage under the Erie Policy is triggered when the insured becomes legally obligated to pay damages for bodily injury or property damage caused by an occurrence during the policy period and in the coverage territory.

30.    "Bodily injury" is defined by the Erie Policy as bodily injury, sickness or disease sustained by a person, including death resulting from these at any time.  *See Exhibit 2 and 3, Commercial General Liability Coverage Form, page 12.*

31.    "Property damage" is defined by the Erie Policy as

a.  Physical injury to tangible property, including all resulting loss of use or that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.  Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*See Exhibit 2 and 3, Commercial General Liability Coverage Form,* page 14.

32.  "Occurrence" is defined by the Erie Policy as an accident, including continuous or repeated exposure to substantially the same general harmful conditions. *See Exhibit 2 and 3, Commercial General Liability Coverage Form,* page 13.

33.  Coverage for bodily injury and property damage liability under the Erie Policy is subject to certain exclusions and limitations.

34.  Specifically, the Erie Policy provides as follows:

**SECTION I – COVERAGES**

2.      **Exclusions**

This insurance does not apply to:

a.  **Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.  This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*See Exhibit 2 and 3, Commercial General Liability Coverage Form,* page 1.

35.  The Erie Policy also contains the following exclusion:

**SECTION I – COVERAGES**

2.       **Exclusions**

This insurance does not apply to:

e.  **Employer's Liability**

"Bodily injury" to:

1)  An "employee" of the insured arising out of and in the course of:

a.  Employment by the insured; or

b.  Performing duties related to the conduct of the insured's business; or

The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **1)** above.

*See Exhibit 2 and 3, Commercial General Liability Coverage Form,* page 2.

36.      The Erie Policy also contains the following exclusion by way of Endorsement:

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A.  The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury and Property damage Liability"**

This insurance does not apply to:

"Bodily injury" to:

1.  A person arising out of any:

a.  Refusal to employ that person;

10

      b.  Termination of that person's employment; or

      c.  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or malicious prosecution directed at that person; or

2.  The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person to whom any of the employment-related practices described in Paragraphs 1., 2. or 3. above is directed.

This exclusion applies:

1.  Whether the injury-causing event described in Paragraphs a., b., or c. above occurs before employment, during employment or after employment of that person;

2.  Whether the insured may be liable as an employer or in any other capacity; and

3.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

*See Exhibit 2 and 3, Employment Related Practices Exclusion Endorsement*, page 1.

37.    The allegations contained in the Complaint in the Underlying Lawsuit do not constitute an occurrence as defined by the Erie Policy so as to trigger coverage for bodily injury or property damage liability.

38.    The allegations contained in the Complaint in the Underlying Lawsuit do not allege bodily injury as defined by the Erie Policy.

39.    The allegations contained in the Complaint in the Underlying Lawsuit do not allege property damage as defined by the Erie Policy.

40.     The allegations contained in the Complaint in the Underlying Lawsuit constitute intentional conduct and are excluded under the terms of the Erie Policy relative to bodily injury and property damage liability coverage.

41.     The allegations contained in the Complaint in the Underlying Lawsuit arise out of the Respondent, Amanda Maynus' employment by West Tenampa Mexican Restaurant, Inc. or during the performance of duties related to the conduct of the business of West Tenampa Mexican Restaurant, Inc.

42.     The claims asserted in the Complaint in the Underlying Lawsuit are excluded by way of the Employer's Liability Exclusion in the Erie Policy relative to bodily injury liability coverage.

43.     The claims asserted by the Respondent, Amanda Maynus, in the Underlying Lawsuit allege liability based on constructive termination of employment and employment-related practices, including defamation, harassment, humiliation, and discrimination.

44.     The claims asserted in the Complaint in the Underlying Lawsuit are excluded by way of the Employment Related Practices Exclusion in the Erie Policy relative to bodily injury and property damage liability coverage.

45.     Based on the provisions of the Erie Policy, whether cited in this Petition for Declaratory Judgment or not, there is no coverage for bodily injury or property damage liability for the claims asserted in the Complaint in the Underlying Lawsuit.

### *The Erie Policy – Personal And Advertising Injury Liability Coverage*

46.     The Petitioner restates and incorporates herein its allegations as contained in Paragraphs 1 through 45 of this Petition for Declaratory Judgment, as if fully set forth herein.

47.     Relative to personal and advertising injury liability coverage, the insuring

agreement in the Erie Policy, as modified by Endorsement, provides as follows:

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

### SECTION I – COVERAGES

### COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages, including punitive or exemplary damages to the extent allowed by law, because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply.  We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.  But:

      1) The amount we will pay for damages is limited as described in Section **III** – Limits of Insurance; and

      2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C**.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was

committed in the "coverage territory" during the
policy period.

*See Exhibit 2 and 3, Commercial General Liability
Coverage Form,* page 5 and *Coverage for Punitive
Damages Endorsement,* page 2.

48.    "Personal and Advertising Injury" is defined by the Erie Policy as

follows:

### SECTION V – DEFINITIONS

14. "Personal and advertising injury" means injury,
    including consequential "bodily injury", arising out of
    one or more of the following offenses:

    a.   False arrest, detention or imprisonment;

    b.   Malicious prosecution;

    c.   The wrongful eviction from wrongful entry into,
        or invasion of the rights of private occupancy of
        a room, dwelling or premises that a person
        occupies, committed by or on behalf of its
        owner, landlord or lessor;

    d.   Oral or written publication, in any manner, of
        material that slanders or libels a person or
        organization or disparages a person's or
        organization's goods, products or services;

    e.   Oral or written publication, in any manner, of
        material that violates a person's right of privacy;

    f.   The use of another's advertising idea in your
        "advertisement" or

    g.   Infringing upon another's copyright, trade dress
        or slogan in your "advertisement".

*See Exhibit 2 and 3, Commercial General Liability
Coverage Form,* page 13.

49.    Based on the language of the insuring agreement, coverage under the Erie

Policy for personal and advertising injury is triggered when personal and advertising

14

injury is caused by an offense arising out of the insured's business if the offense is committed in the coverage territory during the policy period.

50.     Coverage for personal and advertising injury liability under the Erie Policy is subject to certain exclusions and limitations.

51.     Specifically, the Erie Policy provides the following exclusion:

**SECTION I – COVERAGES**

2.     **Exclusions**

This insurance does not apply to:

a.     **Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

*See Exhibit 2 and 3, Commercial General Liability Coverage Form,* page 6.

52.     The Erie Policy also contains the following exclusion for personal and advertising injury liability coverage by way of the following Endorsement:

**EMPLOYMENT-RELATED PRACTICES EXCLUSION**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**B.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage B – Personal Injury and Advertising Injury Liability**":

This insurance does not apply to:

"Personal and advertising injury" to:

1.  A person arising out of any:

15

    a.  Refusal to employ that person;

    b.  Termination of that person's employment; or

    c.  Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination or malicious prosecution directed at that person; or

2.  The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person to whom any of the employment-related practices described in Paragraphs 1., 2. or 3. above is directed.

This exclusion applies:

1.  Whether the injury-causing event described in Paragraphs a., b., or c. above occurs before employment, during employment or after employment of that person;

2.  Whether the insured may be liable as an employer or in any other capacity; and

    a.  To any obligation to share damages with or repay someone else who must pay damages because of the injury.

*See Exhibit 2 and 3, Employment-Related Practices Exclusion Endorsement*, page 1.

53.    The allegations contained in the Complaint in the Underlying Lawsuit do not allege personal and advertising injury as defined by the Erie Policy.

54.    The allegations contained in the Complaint in the Underlying Lawsuit constitute a knowing violation of the rights of another and are excluded under the terms of the Erie Policy relative to personal and advertising injury liability coverage.

16

55.     The claims asserted by the Respondent, Amanda Maynus, in the Underlying Lawsuit allege liability based on constructive termination of employment and employment-related practices, including defamation, harassment, humiliation, and discrimination.

56.     The claims asserted in the Complaint in the Underlying Lawsuit are excluded by way of the Employment Related Practices Exclusion in the Erie Policy relative to personal and advertising injury liability coverage.

57.     Based on the provisions of the Erie Policy, whether cited in this Petition for Declaratory Judgment or not, there is no coverage for personal and advertising injury liability for the claims asserted in the Complaint in the Underlying Lawsuit.

WHEREFORE, Erie respectfully requests the following relief:

1.     That this Court declare that, based on the language of the Erie Policy, the Respondents, Lupe Jose Valencia and Artemio Perez, are not insureds as defined by the Erie Policy for the claims asserted in the Underlying Lawsuit;

2.     That this Court declare that, based on the language of the Erie Policy, the claims asserted against the Respondents in the Complaint in the Underlying Lawsuit are not covered under the bodily injury and property damage liability provisions of the Policy;

3.     That this Court declare that, based on the language of the Erie Policy, the claims asserted against the Respondents in the Complaint in the Underlying Lawsuit are not covered under the personal and advertising injury liability provisions of the Policy;

4.      That this Court declare that, under the Erie Policy, Erie has no duty to
defend or indemnify the Respondents, West Tenampa Mexican
Restaurant, Inc., Lupe Jose Valencia and Artemio Perez relative to the
claims asserted against them in the Complaint filed in in the Underlying
Lawsuit;

5.      Such other and further relief as this Court deems just and appropriate.

ERIE INSURANCE PROPERTY
& CASUALTY COMPANY

BY COUNSEL

/s/ Matthew J. Perry
Matthew J. Perry, Esquire WVSB 8589
**LAMP BARTRAM LEVY**
**TRAUTWEIN & PERRY, PLLC**
Post Office Box 2488
Huntington, WV 25725-2488
(304) 523-5400
(304) 523-5409
mperry@lbltplaw.com
*Counsel for Erie Insurance Property*
*& Casualty Company*